# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JOSEPH MARK WHITMORE,** | ) |
| Petitioner, | ) ) |
| v. | ) NO. 2:19-cv-00089 |
| **STATE OF TENNESSEE,** | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Joseph Mark Whitmore filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 7), and Respondent filed an Answer (Doc. No. 11). In response, Petitioner filed an "Amended Complaint" (Doc. No. 16), a "Motion for Production of Records" (Doc. No. 14), and a "Motion to Overturn because of Unlawful Search and Seizure" (Doc. No. 15). For the following reasons, Petitioner is not entitled to relief under Section 2254, the pending motions will be denied, and this action will be dismissed.

**I.    Background**

A Putnam County grand jury indicted Petitioner on two counts: (1) possession with intent to sell or deliver more than a half ounce of marijuana in a drug-free school zone; and (2) possession with intent to sell or deliver more than a half gram of methamphetamine in a drug-free school zone. (Doc. No. 10-1 at 1–2); Whitmore v. State, No. M2018-01526-CCA-R3-PC, 2019 WL 1873288, at *1 (Tenn. Crim. App. Apr. 26, 2019). Petitioner entered a negotiated plea agreement through which he pleaded guilty to count 2, with the school zone enhancement removed, and count 1 was dismissed. (Doc. No. 10-1 at 1–2); Whitmore, 2019 WL 1873288, at *1. Petitioner received an 8-year sentence at 30% release eligibility. (Doc. No. 10-1 at 2).

The state provided the following factual basis for the plea at the plea hearing: In March 2015, police responded to "a domestic violence situation" at Petitioner's residence. (Doc. No. 10-4 at 11–12). There was a female at the residence "who was the subject of [Petitioner's] bond conditions," and Petitioner was "possibly [] violating his . . . conditions by being there." (Id.). The female opened the door, police entered the residence, and they eventually found more than a half gram of methamphetamine in Petitioner's room. (Id. at 12). "There were scales throughout the residence, all leading to the inference that the methamphetamine was for purposes of sale." (Id.).

Petitioner filed a pro se post-conviction petition (Doc. No. 10-2 at 3–12), the court appointed counsel (id. at 14–15), and counsel filed an amended petition (id. at 18–21). The court held a hearing (Doc. No. 10-3) and denied relief (id. at 32–37; Doc. No. 10-2 at 25–29). Petitioner filed an untimely notice of appeal, accompanied by a motion to waive the timeliness filing requirement. (Doc. No. 10-5); Winkler, 2019 WL 1873288, at *4. The Tennessee Court of Criminal Appeals ("TCCA") granted the motion, considered the merits of Petitioner's appeal, and ultimately affirmed the denial of post-conviction relief. Winkler, 2019 WL 1873288. The Tennessee Supreme Court denied Petitioner's request for discretionary review. (Doc. No. 10-11).

**II.     Claims**

Petitioner initiated this action by submitting a four-page filing citing a range of legal authority, including 28 U.S.C. § 2254. (Doc. No. 1). The Court directed Petitioner to complete and return a form petition (Doc. No. 5), and he complied (Doc. No. 7). Liberally construing the initial filing alongside the form petition, Petitioner asserts the following claims:[1]

1.      Police illegally searched his residence and seized evidence without a warrant or probable cause (Doc. No. 7 at 5; Doc. No. 1 at 1, 3–4);

---

[1] These claims have been numbered and ordered for clarity, without regard to the how they are numbered in the initial filing or form petition.

2. Police confiscated property he legally possessed (Doc. No. 7 at 10);

3. Police tampered with the seized methamphetamine (id. at 6);

4. The indictment was void (Doc. No. 1 at 2, 4);

5. The indictment did not charge him with the offense of conviction (id. at 2);

6. The "original" methamphetamine charge was improperly "enhanced" without "new information" (Doc. No. 7 at 8);

7. The sentence was illegal (Doc. No. 1 at 2).

### III. Legal Standard

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Harrington v. Richter, 562 U.S. 86, 97 (2011). AEDPA establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 102. Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" Hill v. Curtin, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

3

prisoner's case.'" Id. (quoting Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Pouncy v. Palmer, 846 F.3d 144, 158 (6th Cir. 2017) (quoting Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011) (citing Byrd v. Workman, 645 F.3d 1159, 1172 (10th Cir. 2011)).

The demanding review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." Wagner v. Smith, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." Atkins v. Holloway, 792 F.3d 654, 657 (6th Cir. 2015) (citing Jones v. Bagley, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" Middlebrooks v. Carpenter, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing Sutton v. Carpenter, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Davila, 137 S. Ct. at 2065 (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Garcia-Dorantes v. Warren, 801 F.3d 584, 598 (6th Cir. 2015) (quoting Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392 (2004) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

**IV. Analysis**

Respondent argues that Petitioner's claims should be dismissed as "untimely, not cognizable, procedurally defaulted, or a combination of the three." (Doc. No. 11 at 2). "Because

5

the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court" can resolve a habeas petition on grounds other than timeliness "in the interest of judicial economy." Mateo-Castellanos v. Rapelje, No. 2:11-CV-13761, 2012 WL 1555210, at *2 (E.D. Mich. May 1, 2012) (citing Smith v. State of Ohio Dep't of Rehab., 463 F.3d 426, 429 n.2 (6th Cir. 2006)). As explained below, the Court agrees that Petitioner's claims are either not cognizable or procedurally defaulted, and they will be denied on those grounds.[2]

### A. Non-Cognizable Claims

In Claims 1 and 2, Petitioner asserts that the search of his residence and the seizure of evidence and property were illegal. These claims arise under the Fourth Amendment. (Doc. No. 1 at 1 (citing the Fourth Amendment as a basis for "illegal seizure[]" and "illegal search warrant[]" claims)). Respondent argues that these claims are not cognizable. (Doc. No. 11 at 14–15). The Court agrees.

The Court cannot grant "habeas relief based on a state court's failure to apply the exclusionary rule of the Fourth Amendment, unless the claimant shows that the State did not provide him 'an opportunity for full and fair litigation of [his] Fourth Amendment claim.'" Rashad v. Lafler, 675 F.3d 564, 570 (6th Cir. 2012) (quoting Stone v. Powell, 428 U.S. 465, 494 (1976)).

---

[2] Although it is unnecessary to address Respondent's timeliness argument in detail, it is likely without merit. This argument hinges on the premise that Petitioner's state post-conviction petition was not "pending" after the time for him to file a notice of appeal expired and before he filed an untimely notice of appeal accompanied by a motion to waive the timeliness filing requirement. (Doc. No. 11 at 11–14). But "a post-conviction appeal is treated the same as" a post-conviction petition or other application for collateral review for statutory tolling purposes. Griffin v. Lindamood, No. 2:16-CV-188-JRG-HBG, 2017 WL 3974463, at *5 (E.D. Tenn. Sept. 6, 2017) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). And the Court generally determines whether such a collateral attack "is 'properly filed' . . . by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws . . . then it was not properly filed." Id. at *4 (quoting Freeman v. Page, 208 F.3d 572, 576 (7th Cir. 2000)). Here, Petitioner sought and received permission from the TCCA to proceed on the merits of an untimely appeal. It therefore appears that Petitioner successfully "resuscitated his [post-conviction] petition," such that "the limitation period [was] tolled because an application for state review [was] pending" during the gap of time identified by Respondent. See Scarber v. Palmer, 808 F.3d 1093, 1096 (6th Cir. 2015) (citing Sherwood v. Prelesnik, 579 F.3d 581, 587 (6th Cir. 2009)).

6

An "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.'" Good v. Berghuis, 729 F.3d 636, 639 (6th Cir. 2013) (quoting Powell, 528 U.S. at 949).

Here, Petitioner clearly had an opportunity to challenge the search of his residence in state court. The record reflects that Petitioner filed a motion to suppress prior to his pleading guilty. The court held a suppression hearing and heard testimony from at least two witnesses: an officer who searched Petitioner's residence, and the female who opened the door when the police arrived.[3] (Doc. No. 12 at 6–7). The officer testified that Petitioner ultimately consented to a search after some initial reluctance, and the female testified that Petitioner did not consent. (Id. at 7–8). The court credited the officer's account and denied the motion to suppress. (Id.). Thus, regardless of Petitioner's apparent displeasure with the adequacy of the procedure used to resolve his Fourth Amendment claims in state court, he had a full and fair opportunity to litigate them. Claims 1 and 2 are therefore not reviewable in this federal habeas corpus proceeding.

### B. Procedurally Defaulted Claims

In Claims 3 through 7, respectively, Petitioner asserts that police tampered with the seized methamphetamine, the indictment was void and did not charge him with the offense of conviction, the methamphetamine charge was improperly enhanced, and the sentence was illegal. Respondent contends that these claims are procedurally defaulted. (Doc. No. 11 at 16). The Court again agrees.

Petitioner did not present Claims 3 through 7 to the Tennessee Court of Criminal Appeals at any point. That is, he did not file a direct appeal, and he did not include these claims in his post-

---

[3] The suppression hearing details are taken from the Putnam County Criminal Court's "Order Denying Motion to Suppress" submitted by Petitioner. (See Doc. No. 12 at 6–8).

7

conviction appeal. And Petitioner can no longer present these claims to the TCCA because the 30-day window for filing a direct appeal expired long ago and they are barred by Tennessee's "one-petition" limitation on post-conviction relief.[4] See Tenn. R. App. P. 4(a); Tenn. Code Ann. § 40-30-102(a). Because Petitioner "fail[ed] to present" these claims in state court, and he can no longer do so, these claims are "technically exhausted, yet procedurally defaulted." See Atkins, 792 F.3d at 657 (citing Jones, 696 F.3d at 483–84). Petitioner also does not argue cause and prejudice or a manifest miscarriage of justice to overcome this default.

### C. "Amended Complaint"

In response to Respondent's Answer raising the procedural default issue, Petitioner submitted a filing titled "Amended Complaint." (Doc. No. 16). It is unclear whether Petitioner intends this filing to be considered as a Reply in support of the previously-filed habeas petition, or as a Motion to Amend the Petition. (See id. at 1 (stating that the filing is submitted "[i]n support of the previously filed complaint [sic]"); but see id. at 1, 5 (noting that Petitioner raised claims for ineffective assistance of counsel in his post-conviction petition and citing legal authority for amending a habeas petition)). Either way, however, this filing does not entitle Petitioner to relief.

#### 1. Construed as a Reply

To the extent that the "Amended Complaint" is construed as a Reply, it does not establish the cognizability of Claims 1 and 2 or provide a basis for overcoming the procedural default of Claims 3 through 7. First, Petitioner simply re-asserts Claims 1 and 2 by stating that the trial court erred by denying his motion to suppress because "the way the evidence was gathered violated the

---

[4] There are three narrow circumstances in which a state prisoner may file a motion to reopen post-conviction proceedings, but none apply to Petitioner's claims. See Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (citing Fletcher v. Tennessee, 951 S.W.2d 378, 380–81 (Tenn. 1997) ("A [Tennessee] prisoner may file a motion to reopen his first post-conviction petition only if his claim stems from a newly established constitutional right that applies retroactively, relies on scientific evidence that he is actually innocent, or involves a sentence enhanced because of a previous conviction that has been declared invalid.")).

Fourth Amendment." (Id. at 3). But for the reasons explained above, Petitioner's Fourth Amendment claims are not reviewable in this proceeding.

Second, as to Claims 3 through 7, the Court notes that Petitioner cites a range of legal authority regarding ineffective assistance of trial counsel. (See id. at 1–3). And in some circumstances, "[i]neffective assistance of counsel can constitute cause for a procedural default." Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (citing Carrier, 477 U.S. at 492). But "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." Id. (quoting Edwards v. Carpenter, 529 U.S. 446, 453 (2000)). That is the case here, as the ineffective-assistance claims raised in Petitioner's post-conviction petition are entirely unrelated to Claims 3 through 7.[5] For this reason, Petitioner "cannot rely on ineffective assistance of counsel to establish cause to excuse his procedural default." Id.

In short, Petitioner has not established cause and prejudice or a manifest miscarriage of justice to overcome the procedural default of Claims 3 through 7. Accordingly, these claims are not subject to further review.

### 2. Construed as a Motion to Amend

To the extent that the "Amended Complaint" is construed as a Motion to Amend the Petition, it still does not provide Petitioner a basis for relief. In it, Petitioner notes that he raised ineffective-assistance claims in his post-conviction petition. (Doc. No. 16 at 1). There, Petitioner asserted that trial counsel was ineffective in three ways: (1) "advis[ing] him that he could withdraw his guilty plea for any reason within thirty (30) [days] after the sentencing hearing"; (2) "pressur[ing him] into signing the plea agreement"; and (3) failing to "present all mitigating factors

---

[5] Petitioner's post-conviction claims are discussed in more detail below.

9

at his sentencing hearing." (Doc. No. 10-2 at 26). Petitioner's attempt to add these three claims, however, will be denied as futile.

At this stage in the proceedings, Petitioner requires the Court's leave to amend the petition. See Fed. R. Civ. P. 15(a)(1) (establishing the circumstances in which a party may amend as a matter of course, none of which apply here). Courts "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In evaluating the interests of justice, courts consider several factors, including 'undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" Oleson v. United States, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting Coe v. Bell, 161 F.3d 320, 341 (6th Cir. 1998)). Here, it would be futile for Petitioner to add the proposed claims because they are either procedurally defaulted or do not survive the demanding review of claims adjudicated on the merits in state court.

Petitioner's second proposed claim is procedurally defaulted without cause. In the trial court, Petitioner asserted that trial counsel "pressured [him] into signing the plea agreement." The court rejected that claim (Doc. No. 10-2 at 29), and Petitioner did not present it to the TCCA on post-conviction appeal. (See Doc. No. 10-6 (post-conviction appeal brief)). He can no longer do so, as it is not within the narrow category of claims appropriate for a motion to reopen post-conviction proceedings. See Hodges, 727 F.3d at 530 (citing Fletcher, 951 S.W.2d at 380–81). And Petitioner makes no argument for overcoming this default. Accordingly, it would be futile to allow Petitioner to amend the petition to add this claim.

Next, Petitioner's first and third proposed claims were exhausted on post-conviction appeal, but the TCCA's resolution of these claims was clearly reasonable. The federal law governing the adequacy of a criminal defendant's representation is defined in Strickland v.

10

Washington, 466 U.S. 668 (1984). Premo v. Moore, 562 U.S. 115, 121 (2011). The TCCA correctly identified this standard before rejecting Petitioner's claims on the merits. Whitmore, 2019 WL 1873288, at *5–7.

Under Strickland, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (citing Strickland, 466 U.S. at 687). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Counsel's performance is deficient where it falls "below an objective standard of reasonableness." Id. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

When a petitioner claims that "ineffective assistance led to the improvident acceptance of a guilty plea," the prejudice prong of Strickland requires him to "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" Lafler v. Cooper, 566 U.S. 156, 163 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The Supreme Court has explained the heavy burden a petitioner bears in these circumstances:

> "Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

11

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below Strickland's standard," but "whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

In Petitioner's first proposed claim, he asserts that trial counsel improperly advised him that he could withdraw his guilty plea for any reason within 30 days after the sentencing hearing. The TCCA rejected this claim as follows:

> The Petitioner essentially argues that the post-conviction court erred in accrediting the testimony of trial counsel that it was "not his practice" to advise clients that they could withdraw their guilty pleas within 30 days of sentencing over the testimony of the Petitioner that trial counsel did advise him he could do so. At the post-conviction hearing, the Petitioner testified that trial counsel told him that he "could withdraw [his] guilty plea within 30 days of sentencing mainly." Asked, "if [trial counsel] had not told you that, you're saying that you would have wanted to go ahead and face the drug-free zone trial?" the Petitioner answered, "Possibly, uh-huh." In contrast, trial counsel testified that there must have been some type of "miscommunication" for the Petitioner to believe he could withdraw his plea. Trial counsel testified that he was unsure whether he and the Petitioner ever discussed withdrawing his plea, but trial counsel had "just never done that." Had the Petitioner asked about withdrawing his guilty plea, trial counsel would have advised, "No, that's not going to happen." Trial counsel, a veteran public defender, testified that he had only filed one motion to withdraw a guilty plea throughout his entire career. Moreover, during the guilty plea colloquy, the Petitioner asked for assurance from the court that the eight-year sentence was to be served at 30%, but he was silent as to his intent to withdraw his plea.
>
> In accrediting the testimony of trial counsel, the post-conviction court reasoned as follows:
>
>> The Petitioner in this case asserts that he was improperly advised that he could withdraw his guilty plea within thirty (30) days of the sentencing hearing. After listening to the evidence presented, this Court cannot say that the evidence establishes by a clear and convincing level that [trial counsel] failed to advise his client properly under prevailing professional norms as judged within the

12

> wide range of reasonable professional assistance. After hearing testimony from both the Petitioner and [trial counsel], this Court credits the testimony of [trial counsel] as to any conflicts/disputed facts between the two. The Petitioner failed to meet his burden in establishing that [trial counsel] advised him that he would be able to withdraw his plea. As pointed out by the State, [the Petitioner] was advised during the plea process by the Court that by entering his plea, there would be no appeal. The Court then advised the Petitioner that the result of the plea would be a final conviction on his record. When asked if he understood these things, the Petitioner responded that he did. This further bolsters the testimony of [trial counsel] that he would not have gave the erroneous advi[c]e of a withdrawal of plea after sentencing. At no time during the guilty plea process did the Petitioner indicate that he would be allowed to withdraw his plea upon a unfavorable outcome of sentencing. The evidence presented in this hearing indicated that the Petitioner was well represented and had a clear understanding of the options that were available to him.
>
> The record does not preponderate against the findings of the post-conviction court. Accordingly, we conclude that the Petitioner has failed to establish that trial counsel was deficient. In addition, because the Petitioner was equivocal upon his intent to proceed to trial and risk a harsher sentence but for trial counsel's alleged erroneous advice, we likewise conclude that the Petitioner has failed to demonstrate any prejudice to his case. He is not entitled to relief.

Whitmore, 2019 WL 1873288, at *6–7.

This ruling was reasonable. The state court noted Petitioner's plea hearing testimony, during which he did not give any indication that he believed he would be allowed to withdraw his guilty plea if he was displeased with his ultimate sentence. The court advised Petitioner that he would have a "final conviction" upon pleading guilty (Doc. No. 10-4 at 7), and Petitioner testified that he understood that the court would decide the manner of service for his 8-year sentence at a subsequent sentencing hearing (id. at 9–11). Petitioner's plea hearing testimony "carries great weight." Marks v. Davis, 504 F. App'x 383, 386 (6th Cir. 2012) (citing Blackledge v. Allison, 431 U.S. 63, 73–74 (1977)); see also Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir. 1999) (quoting Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986)) ("[W]here the court has scrupulously

13

followed the required procedure [during a plea colloquy], the defendant is bound by his statements in response to that court's inquiry.").

The state court also credited trial counsel's testimony that he did not, in fact, advise Petitioner that he would be allowed to withdraw his guilty plea for any reason within 30 days after the sentencing hearing. The Court must defer to this credibility finding as long as it is not "clearly erroneous." Howell v. Hodge, 710 F.3d 381, 386 (6th Cir. 2013) (quoting Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam)). And Petitioner does not approach the high bar of demonstrating that the state court's credibility determination was clearly erroneous. Accordingly, it would be futile for Petitioner to amend the petition to add his first proposed claim.

In Petitioner's third proposed claim, Petitioner asserts that counsel provided ineffective assistance at the sentencing hearing by failing to present mitigating evidence. The TCCA rejected this claim:

> [T]he Petitioner argues that the post-conviction court improperly determined that trial counsel was not ineffective in representing him at sentencing. Specifically, the Petitioner argues that trial counsel failed to investigate mitigating evidence and issue a subpoena for Jean Coty, who could have presented evidence that may have mitigated his sentence. According to the Petitioner, he asked trial counsel to present three mitigating factors to the court at sentencing: (1) that the Petitioner was a successful business co-owner, (2) that he had seventeen months of college experience, and (3) that he had not been charged with a crime in eleven years.
>
> In ruling on this issue, the post-conviction court found that "[f]ailure to issue subpoenas for potential witnesses aside, no evidence was presented at the Post-Conviction hearing on any substance of said witnesses that would have resulted in a different outcome at sentencing." The record does not preponderate against the finding of the post-conviction court. While the Petitioner testified that Coty would have been a "very credible" witness and could have presented mitigating factors at the sentencing hearing, he failed to introduce Coty as a witness during the post-convicting hearing. There was also no evidence at the post-conviction hearing that would have explained how Coty's alleged testimony would have mitigated the Petitioner's sentence. Because Coty was not present at the post-conviction hearing and because no additional evidence was presented regarding her testimony or possible mitigating factors, the Petitioner has failed to prove that trial counsel was deficient at sentencing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App.

14

> 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). The Petitioner is not entitled to relief on this issue.

Whitmore, 2019 WL 1873288, at *7.

This ruling was reasonable as well. At the evidentiary hearing, Petitioner did not present any of the evidence that he claims would have been mitigating if presented at sentencing. It was thus reasonable for the TCCA to determine that Petitioner failed to carry his burden of demonstrating deficiency and prejudice. See Tinsley v. Million, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [petitioner's proffered mitigating witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."); Hutchison v. Bell, 303 F.3d 720, 748–49 (6th Cir. 2002) (citations omitted) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material."). It would be futile for Petitioner to amend the petition to add his third proposed claim.

In sum, liberally construing the "Amended Complaint" as a Motion to Amend the Petition to add the claims raised in Petitioner's state post-conviction petition, this motion will be denied as futile.

### D. Pending Motions

Finally, the Court turns to Petitioner's "Motion for Production of Records" (Doc. No. 14) and "Motion to Overturn because of Unlawful Search and Seizure" (Doc. No. 15). In the first motion, Petitioner requests copies of instructions given or refused to the grand jury during its deliberation, witness statements, and "[a]ny and all records, papers, documents, and all matters relating to the defense and/or prosecution of the defendant in this matter." (Doc. No. 14 at 1). And

in the second motion, Petitioner argues in support of his non-cognizable Fourth Amendment claims (Doc. No. 15 at 1–4), before requesting "the above named papers[] and documents" and "production of all the data moved for" (id. at 5). It is unclear what papers, documents, or data Petitioner is referring to in the second motion.

Habeas petitioners do not have a "right to automatic discovery." Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004) (quoting Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001)). Under Habeas Rule 6(a), there must be "good cause" to authorize a party to conduct discovery. This rule "embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Id. (quoting Bracy v. Gramley, 520 U.S. 899, 908–09 (1997)). "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." Cornwell v. Bradshaw, 559 F.3d 398, 409 (6th Cir. 2009) (quoting Williams, 380 F.3d at 974).

Here, Petitioner has not provided good cause for the broad discovery that he seeks. He fails to provide specific factual allegations giving the Court reason to believe that he may be entitled to relief. Rather, the pending motions do not alter the Court's conclusion that all of Petitioner's claims—those in the initial filing, form petition, and liberally construed Motion to Amend the Petition—should be rejected as not cognizable, procedurally defaulted, or without merit. Accordingly, the pending motions will be denied.

**IV.     Conclusion**

For these reasons, Petitioner is not entitled to relief under Section 2254. The pending motions (Doc. Nos. 14, 15) will be denied, and this action will be dismissed.

16

Because this constitutes a "final order adverse to" Petitioner, the Court must grant or deny a certificate of appealability ("COA"). Habeas Rule 11(a). A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Dufresne v. Palmer, 876 F.3d 248, 253 (6th Cir. 2017) (quoting Slack, 529 U.S. at 484).

For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will deny a COA.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE